UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| NICKIE MANN and SCOTTY RAY MANN, | ) | |
|---|---|---|
| | ) | Case No. 4:25-cv-9 |
| *Plaintiffs*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Michael J. Dumitru |
| METROPOLITAN GOVERNMENT OF LYNCHBURG, MOORE COUNTY, TENNESSEE, et al, | ) | |
| *Defendants*. | ) | |

# MEMORANDUM OPINION

Before the Court are two motions to dismiss Plaintiffs' complaint: (1) Defendants Sloan Stewart, Sheila Moore, and Steven Leo Moore's (collectively, the "Individual Defendants") motion to dismiss the claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Doc. 20); and (2) the Metropolitan Government of Lynchburg, Tennessee's ("Lynchburg") motion to dismiss the complaint in part, as to Plaintiffs' failure-to-train claim, also under Rule 12(b)(6) (Doc. 19). For the following reasons, the Court will (1) **GRANT IN PART** and **DENY IN PART** the Individual Defendants' motion to dismiss (Doc. 20) and (2) **GRANT** Lynchburg's motion to dismiss the failure-to-train claim (Doc. 19).

## I. BACKGROUND

Plaintiffs Nickie L. Mann and Scotty Ray Mann, a married couple, are citizens and residents of Lynchburg, Moore County, Tennessee. (*See* Doc. 1, at 1.) At all relevant times, Sloan Stewart was the mayor of Lynchburg, and Sheila Moore and Steven Leo Moore were

employees of Lynchburg. (*See id.*, at 2.) All three of the Individual Defendants are sued in their individual and official capacities. (*See id.*)

The vast majority of residents in Lynchburg are white. (*See id.* at 3.) Plaintiffs allege that "[a]ccording to the 2024 census, the County had a population consisting of 6,558 residents," and, "[o]f those residents, 92.48% (6,065) are white, 3.86% (253) reported other races, and 3.66% (240) are Black or African American." (*Id.*) Plaintiff Nickie Mann is biracial and states she is "known throughout Moore County and Lynchburg, Tennessee, for her parents being different races." (*Id.*) Plaintiffs allege they and their family members have "experienced racism [for] much of their lives" in Lynchburg and Moore County. (*Id.*) The present dispute involves two incidents in which Plaintiffs allege they and their family were denied access to public services or utilities by the Individual Defendants on account of their race. (*See id.* at 4–9.) They further allege that these denials are part of a pattern in which Lynchburg tolerates, and has sometimes attempted to cover up, racially discriminatory conduct by its officers and employees. (*See id.*)

The first incident took place on June 24, 2024, when Nickie Mann attempted to book a private rental of the Lynchburg Swimming Pool by texting a governmental phone number used for such bookings. (*See id.* at 4.) The complaint alleges that she initially received a text message in response inquiring about her requested dates and party size, but when she answered those questions, she received a text containing racial slurs: "Ight n**** yea I don't think I wanna do this with this old white trash n****." (*Id.* at 4–5.) Nickie Mann then went to the Moore County Court in search of an explanation for this text message and, when she arrived, she noticed Sheila Moore "removing her son, Steven Leo Moore, from the property as if he was being reprimanded." (*Id.* at 5.) Plaintiffs allege upon information and belief that Steven Leo Moore

2

was employed by Lynchburg "despite only recently having been arrested for four (4) Class B Felonies" and having a history of drug abuse. (*Id.*) When Nickie Mann confronted Mayor Stewart and others at the courthouse about the text message, they offered no explanation, and she was subsequently advised there was no more availability at the pool. (*See id.* at 6.) Following this incident, Plaintiffs allege Lynchburg "began attempting to cover up the conduct of its employees and/or officers by having government personnel including Sheila Moore, Steven Leo Moore, the Moore County Police Department, and family members of Moore County Government personnel contact Plaintiffs directly with inconsistent stories as to the ownership of the phone in question." (*Id.*) Plaintiffs allege their complaints about this incident "ultimately went unaddressed." (*Id.* at 7.)

The second incident took place on August 27, 2024, when Nickie Mann called "911" on behalf of her mother, Nancy Simpson, who needed urgent medical attention. (*See id.* at 7.) Emergency operators transferred the call to the Moore County Emergency Communications Center, which "immediately transferred Plaintiff's call to a separate jurisdiction without any further assistance": Fayetteville, Tennessee, which was located twice as far away from Simpson's location than Lynchburg's emergency services. (*Id.* at 7–8.) Later that day, Simpson passed away. (*See id.* at 8.) That same evening, at 9:02 p.m., Nickie Mann received another text message from the same number that had sent the racially inflammatory message in response to her inquiries about the pool: this message read, "Ima suck a n**** dick." (*Id.*)[1]

Plaintiffs filed their complaint against the Individual Defendants and Lynchburg on March 10, 2025, alleging the following causes of action: (1) a 42 U.S.C. § 1983 claim against the Individual Defendants for violating their Equal Protection rights in reference to the

---

[1] Plaintiffs' complaint contains screenshots of both these text messages. (*See* Doc. 1, at 5, 8.)

swimming pool incident, (2) a § 1983 claim against the Individual Defendants for violating their Equal Protection rights in reference to the 911 call, (3) a *Monell* claim against Lynchburg under a custom-of-tolerance theory, (4) a *Monell* claim against Lynchburg for failure to train, (5) intentional infliction of emotional distress against the Individual Defendants, and (6) negligent infliction of emotional distress against the Individual Defendants. (*See id.* at 9–13.) The Individual Defendants move to dismiss all claims against them. (Doc. 20.) Lynchburg moves to dismiss in part as to the failure-to-train claim (but not the custom of tolerance claim, to which it filed an answer).[2] (Doc. 19.) Both motions are ripe for review.

## II. STANDARD OF LAW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id.* at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all

---

[2] Lynchburg's motion to dismiss is styled as a motion to dismiss the "allegations contained in Paragraph 73." (Doc. 19, at 1.) As the Court will explain later, this styling is consistent with the formatting of the Complaint, which alleges failure-to-train liability in Paragraph 73 specifically.

well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

#### A. The Individual Defendants' Motion to Dismiss

The Individual Defendants contend the claims against them should be dismissed for three reasons: (1) the complaint "does not make any specific allegations" against them, (2) the claims against the Individual Defendants in their official capacities are "superfluous" to the extent the complaint makes the same claims against Lynchburg, and (3) punitive damages are not available for Plaintiffs' claims. (*See* Doc. 20, at 2, 6–7.) The Court will address each argument in turn.

First, the Individual Defendants contend the claims against them must be dismissed because the "Complaint Makes No Allegations" against them. (Doc. 20, at 2.) More specifically, the Individual Defendants state, "[w]hile the Complaint makes very vague

conclusory allegations about who the Plaintiffs believe may have sent the offensive texts which they allege were received by the Plaintiff, they do not make any specific allegations against Mayor Sloan Stewart, Sheila Moore, or Steven Leo Moore." (Doc. 20, at 2.) This argument is somewhat difficult to follow, but it fails for at least three reasons. First, it is simply not true that the complaint makes no allegations against the Individual Defendants. (*See* Doc. 1.) In their brief, after claiming the Plaintiffs "do not make any specific allegations against Mayor Sloan Stewart, Sheila Moore, or Steven Leo Moore," the Individual Defendants then quote the allegations that contain, in their words, "direct references" to them, including all complaint allegations that refer to them by name (which totals three complaint allegations referring to "Sloan Stewart," three referring to "Sheila Moore," and five referring to Steven Leo Moore"). (Doc. 20, at 2–3.) The Court does not see a distinction here; an allegation that makes a "direct reference" to a defendant *is* an allegation about, and against, that defendant. Second, in cataloguing only those allegations that mention Stewart, Sheila Moore, or Steven Leo Moore specifically, the Individual Defendants fail to acknowledge the many allegations that refer to *all* defendants (of which the Individual Defendants are three of four) collectively; there are at least twenty allegations elsewhere in the complaint about "Defendants," and each one appears to allege something against all defendants in this litigation. (*See* Doc. 1, at 9–13.) Third, the complaint makes more than "very vague conclusory allegations about who Plaintiffs believe may have sent the offensive texts"—on the contrary, the complaint clearly implies that Steven Leo Moore was responsible for the texts, as in the following allegations:

> 25. Plaintiff, Nickie Mann, presented to the Moore County Courthouse demanding an explanation for the text message.
>
> 26. Upon arrival at the Moore County Courthouse, Sheila Moore was seen removing her son, Steven Leo Moore, from the property as if he was being reprimanded.

> 27. Upon information and belief, Steven Leo Moore was employed by the County, despite only recently having been arrested for four (4) Class B Felonies in accordance with T.C.A. § 39-17-417(c) in Coffee County, Tennessee.

(*Id.* at 5.) When ruling on a Rule 12(b)(6) motion, Courts must view the complaint allegations in the light most favorable to, and draw all reasonable inferences in favor of, the plaintiff. *See Iqbal*, 556 U.S. at 678. Here, given the allegations above, it does not take much favorable light to infer that Steven Leo Moore may have sent the texts and that, if he had, Sheila Moore knew about it. (*See* Doc. 1, at 5.) Thus, the complaint does contain allegations against the Individual Defendants.

Next, the Individual Defendants argue the claims against them in their official capacities "are redundant as Lynchburg has also been sued" and should therefore be dismissed. (Doc. 20, at 6.) It is well-established that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As a result, "when a § 1983 complaint asserts a claim against a municipal entity and a municipal official in her official capacity, federal courts will typically dismiss the official-capacity claim." *Keller v. Metro. Gov't of Nashville and Davidson Cnty.*, 2022 WL 1415925, at *5 (M.D. Tenn. May 4, 2022) (citing *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996); *Direct Constr. Servs., LLC v. City of Detroit*, 2019 WL 1897128, at *6 (E.D. Mich. Apr. 29, 2019)). Here, Plaintiffs are suing both Lynchburg and the Individual Defendants as its officials. (*See* Doc. 1.) The Court finds the official-capacity claims against the Individual Defendants are duplicative of Plaintiffs' claims against Lynchburg and, therefore, must be dismissed. *See Keller*, 2022 WL 1415925, at *5. Still, this issue cannot result in dismissal of any claim in its entirety, as Plaintiffs bring their

claims against the Individual Defendants in both their official and individual capacities.[3]

Finally, the Individual Defendants argue, "[t]o the extent the Plaintiffs are seeking punitive damages for any alleged violation(s) of Tennessee state law, punitive damages are not recoverable from either a governmental entity or its employees for such violations." (Doc. 20, at 6.)[4] The Individual Defendants are correct insofar as punitive damages are unavailable under Tennessee state law "from either the governmental entity or the employee in an action arising from the negligence of the employee." *Johnson v. Smith*, 621 S.W.2d 570, 572 (Tenn. Ct. App. 1981)[5] (citing *Tipton Cnty. Bd. of Ed. v. Dennis*, 561 S.W.2d 148 (Tenn. 1978). However, the Individual Defendants cite no authorities to support the proposition that punitive damages are unavailable against them for intentional torts. (*See* Doc. 20, at 6–7.) This argument warrants dismissal, therefore, of only the claim for negligent infliction of emotional distress to the extent it seeks punitive damages.

### B. Lynchburg's Partial Motion to Dismiss

Plaintiffs allege Lynchburg is liable under § 1983, which provides in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights . . . secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

[3] The complaint refers to the Individual Defendants in Counts I and II (the § 1983 counts brought against the Individual Defendants) with no capacity-related limitations; the Court thus construes Counts I and II as brought against the Individual Defendants in both their individual and official capacities. (*See* Doc. 1, at 9–11.)

[4] The Individual Defendants also argue punitive damages are not available for the § 1983 official-capacity claims against them. (*See* Doc. 20, at 6–7.) However, the Court need not reach that argument because it will already dismiss the individual-capacity claims due to their being duplicative of the claims against Lynchburg.

[5] The Individual Defendants cite *Johnson* incorrectly as a Tennessee Supreme Court case; it is a Court of Appeals case. (*See* Doc. 20, at 6.)

To state a claim under § 1983, a plaintiff must allege "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citations omitted). As the Supreme Court ruled in *Monell*, a local governmental entity is a "person" within the meaning of 42 U.S.C. § 1983 and, therefore, may be subject to liability for § 1983 claims. *See Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008); *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978). However, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). Rather, a municipal defendant can be held liable under § 1983 only "if a custom, policy, or practice attributable to the municipality was the moving force behind the violation of the plaintiff's constitutional rights." *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 685 (6th Cir. 2016) (quoting *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)) (internal quotations omitted). A municipality may be liable for a custom, policy, or practice under § 1983 pursuant to any of "four recognized theories: '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 323 (6th Cir. 2023) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Before proceeding further, the Court offers a brief note on the claims at issue here against Lynchburg. Given the multiple theories of municipal liability available to § 1983 plaintiffs, *see Helphenstine*, 60 F.4th at 323, plaintiffs will often plead multiple *Monell* theories as separate

counts in a complaint, constituting separate claims for relief against a municipal defendant. Here, though, Plaintiffs' complaint includes two separate *Monell* theories in one count—Count III, which reads in its entirety,

> 71. Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 70 of this Complaint.
>
> 72. The Metropolitan Government of Lynchburg, Moore County, Tennessee, is liable for the conduct alleged herein under a theory of municipal liability for permitting, encouraging, tolerating, and knowingly acquiescing to an official pattern, practice, and policy or custom within the County of violating the rights of its minority citizens, as demonstrated by the conduct of its employees and officers and its efforts to cover up or deny the conduct of those employees and officers.
>
> 73. The County is also liable for the conduct alleged herein for failure within the County to train employees regarding their obligations under the Fourteenth Amendments and the laws of the State of Tennessee in order to prevent violations of the same and harm to the citizenry as a result thereof.

(Doc. 1, at 12.) The Court construes Count III, consistent with Plaintiffs' representations in their response brief, as bringing two distinct claims for relief under *Monell*: (1) in Paragraph 72, a custom-of-tolerance claim, and (2), in Paragraph 73, a failure-to-train claim. *See Helphenstine*, 60 F.4th at 323; (Doc. 28, at 6). For purposes of this motion to dismiss for failure to state a claim, then, it is appropriate to treat Count III of the complaint as if it were two separate counts, such that one can be dismissed while the other survives[6]; the Court treats Lynchburg's motion to dismiss Paragraph 73, therefore, as a motion to dismiss one of two *Monell* claims contained in the complaint—the failure-to-train claim. (*See* Doc. 19.)

To prevail on a failure-to-train claim under *Monell*, a plaintiff must show the failure is a

---

[6] The alternative would be to treat Plaintiffs' custom-of-tolerance and failure-to-train theories as one claim, such that Lynchburg would need to show the complaint fails to state a plausible claim as to *both* theories to warrant dismissal under Rule 12(b)(6). Such a construction would be overly formalistic here, especially given that courts routinely treat custom-of-tolerance and failure-to-train theories as separate claims at multiple stages of § 1983 litigation.

result of the municipality's deliberate indifference, which the plaintiff may prove by showing either "(1) a 'pattern of similar constitutional violations by untrained employees' or (2) 'a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation.'" *Helphenstine*, 60 F.4th at 323 (quoting *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738–39 (6th Cir. 2015). Further, when a claim relies on a single violation, the plaintiff must satisfy three elements: "(1) that the County's 'training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.'" *Id.* (quoting *Winkler v. Madison Cnty.*, 893 F.3d 877, 902 (6th Cir. 2018)).

Lynchburg contends the complaint fails to allege the elements of a failure-to-train claim and, more specifically, that Plaintiff's failure-to-train allegations are "facially deficient" because the complaint does not allege the existence of a pattern of similar constitutional violations of untrained employees. (*See* Doc. 19, at 7.) Here, Lynchburg's argument does not account for the full scope of the relevant doctrine because, as explained above, a pattern of similar constitutional violations is not strictly necessary to establish failure-to-train liability—a plaintiff may also rely on a single violation resulting from constitutionally inadequate training, provided she can demonstrate certain additional requirements are met. *See Winkler*, 893 F.3d at 902 (discussing the three additional elements of single-violation failure-to-train liability). Still, Lynchburg is correct that Plaintiff's complaint fails to allege facts sufficient to state a plausible failure-to-train claim, because the complaint fails to plead *any* specific, non-conclusory factual allegations regarding Lynchburg's training, or lack thereof, of its officers. (*See generally* Doc. 1.) Paragraph 73 itself is a legal conclusion, and it amounts to little more than a mere recitation of

the doctrinal definition of failure-to-train liability. *See Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do"). Other than in Paragraph 73, the complaint makes plenty of factual allegations about the conduct of the Individual Defendants, but it makes no allegations regarding training they may have received pursuant to their job responsibilities, and it never alleges that they engaged in unconstitutional conduct *as a result* of inadequate training.[7] (*See generally* Doc. 1.) Suffice to say, were it not for Paragraph 73, the Court would not have known Plaintiffs were attempting to make a failure-to-train claim.

In their response brief, Plaintiffs object that they have alleged a pattern of similar constitutional violations because they have "alleged a pattern of discriminatory behavior that was known and tolerated by County officials and employees, including government-wide efforts to cover up the discriminatory conduct that are sufficient to demonstrate a 'deliberate' and 'conscious' choice by the County Government." (Doc. 28, at 7.) The problem here is that to the extent the complaint does allege a "pattern of discriminatory behavior that was known and tolerated," those allegations sound in Plaintiffs' custom-of-tolerance claim, but it is not clear how they pertain to their failure-to-train claim. (*See id.*) Although the Court can imagine circumstances in which failure-to-train and custom-of-tolerance theories could be linked, here there are no non-conclusory allegations in the complaint to suggest Lynchburg engaged in constitutionally inadequate training *in connection* to its alleged custom of tolerance. (*See id.*) Thus, the Court cannot reasonably infer sufficient factual allegations for a failure-to-train claim

---

[7] The complaint does contain allegations that suggest Lynchburg may have erred in *hiring* Steven Leo Moore, given his alleged history of criminal charges and drug abuse (*see* Doc. 1, at 5); however, negligent hiring is not a ground for *Monell* liability, *see Helphenstine*, 60 F.4th at 323. At best, the possibility that Lynchburg was deliberately indifferent in hiring Steven Leo Moore despite his background may be relevant evidence for its custom-of-tolerance claim.

from Plaintiffs' custom-of-tolerance allegations. *See Iqbal*, 556 U.S. at 678. Thus, the complaint fails to state a claim against Lynchburg for failure to train.

## IV. CONCLUSION

For the foregoing reasons, the Individual Defendants' motion to dismiss (Doc. 20) is hereby (a) **GRANTED IN PART** as to the official-capacity § 1983 claims and the claim for negligent infliction of emotional distress to the extent it seeks punitive damages and (b) **DENIED IN PART** as to the remaining claims against them. Lynchburg's motion to dismiss in part (Doc. 19) is hereby **GRANTED**. The following claims will proceed: (1) the § 1983 individual-capacity claim against the Individual Defendants in reference to the swimming pool incident; (2) the § 1983 individual-capacity claim against the Individual Defendants in reference to the 911 call; (3) the *Monell* custom-of-tolerance claim against Lynchburg; (4) the intentional infliction of emotional distress claim against the Individual Defendants; and (5) the negligent infliction of emotional distress claim against the Individual Defendants, to the extent it does not seek punitive damages.

SO ORDERED.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**